UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:19-CR-00143-PPS |
| | ) | |
| DARRELL E. BOGARD, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION AND ORDER

Defendant Darrell Bogard seeks a compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A). [DE 48.] The motion will be denied because his medical condition is not an extraordinary and compelling reason for release and because the sentencing factors under Section 3553(a) continue to weigh heavily against release given Mr. Bogard's history of rampant drug-related offenses. To release Bogard now, when he has served roughly one-third of his sentence, would be to ignore the importance of providing respect for the law.

## Factual Background

Defendant, Darrell E. Bogard, is a 58-year-old male from Gary, Indiana. [PSR, DE 32, at 2.] Bogard grew up with two parents in a relatively low-income household, evidenced by occasional government aid. *Id*. at 20. Bogard's drug use began with smoking marijuana at 12 years old. *Id*. at 22. Bogard then dealt with addiction throughout his adult life, specifically crack cocaine. *Id*. at 21-22. His criminal history contains many instances of banned substance possession from ages 38 to 55, but most

1

were dismissed. *Id*. at 10-19. He started using heroin at 48 years old. *Id*. at 22. He has twelve children, all now adults. *Id*. at 20. Sadly, Bogard stated that two daughters of his recently passed away. [DE 48-1.]

During September and October 2019, the Porter County Multi-Enforcement Group (PMEG) discovered through a confidential informant (CI) that Bogard engaged in heroin dealing. [DE 32 at 4.] PMEG conducted three controlled purchases between the CI and Bogard during this time. *Id*.

On September 4, 2019, Bogard sold 1.05 grams of suspected heroin to the CI at 2593 Connecticut St. in Gary, Indiana. *Id*. During the transaction, the CI noticed a gun between the cushions of Bogard's couch. *Id*. Bogard then concealed the gun in his waistband. *Id*.

On October 15, 2019, another transaction between Bogard and the CI occurred at 800 Grant St. in Gary, Indiana, where Bogard sold 2.76 grams of heroin to the CI. *Id*. at 5. The last transaction occurred on October 17, 2019, at 2319 Taney St. in Gary, Indiana, where Bogard sold 1.50 grams of heroin to the CI. *Id*. The officers verified the composition of the suspected heroin as heroin via TruNarc Spectrograph after the CI gave it to them. *Id*.

On October 31, 2019, PMEG and Gary SWAT team executed warrants for the three residences where the transactions with the CI occurred. *Id*. at 5-6. Before securing the 2139 Taney Street residence, officers noticed a red Mercury leaving the area with the same license plate associated with Bogard. *Id*. at 6. After Bogard sped 14 mph over a 20-mph zone with a malfunctioning license plate light, officers pulled over the defendant

and arrested him. *Id*. Following the search of several stash houses, multiple types of drugs were recovered. *Id*. at 6-7. Bogard's relevant conduct converted drug weight included 15.29 grams of heroin, 35.09 grams of cocaine, 22.71 grams of methamphetamine, 1.3 grams of fentanyl, 40.3 grams of crack cocaine and $2,912 that converted into drug weight.

Bogard agreed to plead guilty in exchange for a lower sentence recommendation as part of a written plea agreement with the government. *Id*. at 3. Bogard acknowledged that his actions of distributing listed drugs resulted in an offense level of 24. *Id*. On March 3, 2021, Bogard pleaded guilty to distributing a substance containing heroin under 21 U.S.C. 841(a)(1). *Id*. On June 17, 2021, the court sentenced Bogard to 92 months, below the Guideline sentence range of 110 to 137 months. [DE 38.] In the statement of reasons, I explained the rationale for the downward variance, citing Bogard's health issues and drug addiction when determining the lower sentence. [DE 40.]

To his credit, while serving his sentence, Bogard took an active role in combatting his addiction issues. [DE 48-1.] He successfully completed the RWI Drug Program and remained sober throughout. [DE 48-2 at 15; DE 57 at 1.] Additionally, he volunteered as a coordinator, leading by example to promote reduced drug addiction. *Id*. His efforts earned him a letter of recommendation from his addiction counselor, Amy Stevens. *Id*.

In September 2020, Bogard claimed that medical professionals discovered a "disease that was cancerous" during MRI imaging on the defendant before

incarceration. [DE 48-1]. That said, Bogard has not yet received an official cancer diagnosis from any doctor. *Id*. It has been over two years since he last visited an oncologist. *Id*. The prison's medical reports show a discontinued oncology appointment for Bogard first set for March 3, 2023. [DE 48-2 at 10]. Bogard's only evidence of "precancer" is a self-report to the prison medical staff. *Id*. No other medical records indicate a diagnosis of cancer by prison medical staff or off-site physicians. *Id.* However, attached to Bogard's reply are medical documents from the prison indicating a diagnosis of "lymphadenopathy for followup" [DE 57-1 at 1], right axillary adenopathy [DE 57-1 at 2], a biopsy date of August 27, 2020 that showed adenopathy present in his right axilla and some developing in the left axilla [DE 57-1 at 3], and a comment in 2023 that "the lymphoid tissue overall shows marked proliferation of variably sized follicles." [DE 57-1 at 4.]  This all indicates enlarged or swollen lymph nodes.

Bogard reports experiencing several other medical conditions, including asthma, high cholesterol, mood disorder, chronic obstructive pulmonary disease ("COPD"), degenerative spine disease, and pinched nerves. [*Id*.; see also DE 57 at 2-3.]  Bogard does not have health insurance and has not provided a plan to pay for medical expenses if granted release. [DE 48-3 at 3.] Still, he has considered applying for Medicare or something of its likeness. *Id*. Recently, Bogard tested negative for COVID but claims that he is at risk for COVID. [DE 48-2 at 11]. Bogard's medical summary states that he is unvaccinated as of January 23, 2023. *Id*.

Because of his medical issues, Bogard requested compassionate release on February 8, 2023. [DE 48-3 at 7.] The warden denied the request the next day. *Id*. at 8-9.

4

## Standard of Review

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, there is an exception to the rule if "extraordinary and compelling reasons warrant such a reduction," the factors under § 3553(a) justify it, and the reduction adheres to policy statements issued by the Sentencing Commission. The defendant must also submit such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). This analysis proceeds in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). First, the defendant must identify an extraordinary and compelling reason favoring a sentence reduction. *Id*. If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers any applicable § 3553(a) factors as part of determining whether a reduction is appropriate. *Id*.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Custer*, No. 1:15-CR-33-HAB, 2020 WL 4812935, at *2 (N.D. Ind. Aug. 19, 2020) (citing 28 U.S.C. § 994(t)).

The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present, including when the defendant suffers from a terminal illness or suffers from a serious physical or medical condition

5

that substantially diminishes his ability to provide self-care within the prison. *United States v. Foxx*, No. 2:18-CR-80 JD, 2023 WL 3052251, at *2 (N.D. Ind. Apr. 24, 2023) (citing U.S.S.G. § 1B1.13 n.1(A)). Application Note 1 to USSG § 1B1.13 provides specific examples of "extraordinary and compelling reasons" for a sentence reduction when a defendant's medical record includes but is not limited to metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. *United States v. Nguyen*, No. CR09-062RSM, 2022 WL 17582530, at *3 (W.D. Wash. Dec. 12, 2022) (citing USSG § 1B1.13 cmt. n.1(A)).

Still, the Seventh Circuit has held that a court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020). The court must "consider[] the applicant's individualized arguments and evidence." *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022). Ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). But at bottom, compassionate release is still "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020) (citation omitted).

## Discussion

It is clear that Bogard has exhausted his administrative remedies so I'll move directly to the meat of the issue—whether there are extraordinary and compelling reasons for Bogard's release. Bogard requests compassionate release based on his

6

medical conditions, risk of infection to COVID-19, rehabilitation, low custody and pattern risk, and drug quantity.

Let's start with his medical condition. Bogard claims that his oncologist's diagnosis of what Bogard calls a "disease that was cancerous" qualifies as an extraordinary and compelling medical condition. Bogard states that he has been unable to follow up with an oncologist since 2021. He also claims that his medical records demonstrate deteriorated overall health while in prison, as shown by asthma, chronic back pain, and ailing mental health (PTSD). I have reviewed the briefs and records in this case and conclude that no "extraordinary and compelling reasons" warrant a sentence reduction.

While unfortunate, Bogard's medical conditions do not meet the high standard of "extraordinary and compelling." The sentencing guidelines instruct that a defendant must be either terminally ill or substantially incompetent to care for oneself while in prison in order to obtain a compassionate release. U.S.S.G. § 1B1.13 n.1(A). Courts have held that precancer conditions do not meet the standard of extraordinary and compelling. *See Nguyen*, 2022 WL 17582530, at *3-*4 (medical records showing potentially cancerous polyps do not verify a diagnosis of colon cancer); *see also United States v. Adens*, No. 12-616-2, 2022 WL 1226965, at *4 (E.D. Pa. Apr. 26, 2022) ("A prisoner's hypothetical concerns about the possibility of cancer do not provide a compelling or extraordinary reason for compassionate release").

At most, Bogard is suffering from a precancerous condition, but that does not equate to an actual terminal illness. Additionally, the prison physician provided no

7

medical records of actual cancerous symptoms, or such a diagnosis. The only evidence of a disease that is cancerous that I can find is Bogard's self-report to prison medical staff. The biopsy conducted in 2020 indicates enlarged lymph nodes, and the BOP provisionally diagnosed him with lymphadenopathy [DE 57-1 at 3, 1] but according to the National Institute of Health's National Library of Medicine, "lymphadenopathy refers to the swelling of lymph nodes which can be secondary to bacterial, viral, or fungal infections, autoimmune disease, and malignancy." https://www.ncbi.nlm.nih.gov. (last viewed September 12, 2023). According to Bogard, he has an exam scheduled for October 27, 2023. Hopefully that will help clarify his situation so that he can get the most up-to-date treatment possible.

Bogard also has multiple health problems, including asthma, high cholesterol, COPD, mood disorder, degenerative spine disease, and pinched nerves. But these conditions are not severe enough to be considered extraordinary, compelling, or terminal. Additionally, Bogard receives routine medical care from the prison staff and has not claimed to be incapable of caring for himself while in prison.

Although Bogard is unvaccinated, the opportunity for vaccination also negates Bogard's risk of COVID-19 infection as the Seventh Circuit held that vaccinations provide stronger protections from COVID-19 than any release from prison. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order.").

Lastly, I commend Bogard's rehabilitation process, but recognize that it does not create "extraordinary and compelling reasons" for compassionate release, as rehabilitation alone is not an extraordinary and compelling reason to reduce a sentence under § 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t); *United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022); *see also United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021) (referencing § 994(t)'s express language and likewise emphasizing that Congress has made itself "emphatically clear" that rehabilitation alone cannot justify early release under § 3582(c)(1)(A)). Granting release solely based on Bogard's rehabilitation and good behavior would undermine Congress's explicit intent for § 994(t).

Even if I determined that Bogard's conditions constituted an extraordinary and compelling reason for a sentence reduction, I would still be required to consider the sentencing factors in Section 3553(a) in deciding whether to order his release. Section 3553(a) states:

> (a) Factors to be considered in imposing a sentence. —The court shall consider-
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

      (3) the kinds of sentences available;

      (4) the kinds of sentence[s] and the sentencing range established for—

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]

      (5) any pertinent policy statement guidelines [issued by the Sentencing Commission ...;]

      (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

      (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    A court may provide "just one good reason" for denying a motion for compassionate release under the Section 3553(a) analysis. *United States v. Carter*, No. 22-1669, 2023 WL 3645526, at *2 (7th Cir. May 25, 2023) (citing *Rucker*, 27 F.4th at 563).

    In *United States v. Cochran*, the court held that Section 3553(a) factors did not favor a wheelchair-bound defendant's previous drug-dealing conduct. *United States v. Cochran*, No. 2:06 CR 114, 2020 WL 2092836, at *5 (N.D. Ind. May 1, 2020). The *Cochran* defendant was charged with possession of 5 grams of crack cocaine with the intent to distribute. *Id.* at *1. The defendant submitted his request for compassionate release based on becoming blind and wheelchair-bound. *Id.* The court found that his condition qualified as "extraordinary and compelling." *Id.* at 3. But the court also held that the defendant's long criminal record of multiple decades of involvement in illegal activities, disregard for law enforcement, and lengthy sentencing of 405 months (of which three

years remained) weighed against granting compassionate release. *Id*. at *5-*6. The court specifically noted that his distribution of crack cocaine perpetuated the drug's grip on Northwest Indiana for decades. *Id*. at *5.

In the past, I also ruled that a person with a record of drug dealing and providing guns to gangs would not be granted compassionate release. *United States v. Pena*, No. 2:15-CR-72-PPS, 2020 WL 3264113, at *3 (N.D. Ind. June 17, 2020) (defendant's extensive criminal history and "medium risk recidivism level" status still posed a potential danger to the public).

Analysis of Section 3353(a) shows that Bogard's past actions afford no reason for compassionate release. I need only one valid reason to deny it, yet Bogard's conduct provides multiple reasons for such denial. Let's start with his criminal history which dates back to the late 1990's. By my count, Bogard had no less than seven prior drug-related convictions. [DE 32 at 10-16.]  On many of those cases, upon his release from custody, Bogard committed various violations of his supervised release. *Id*. The presentence report shows that Bogard is a difficult person to deter. Although he appears to be a somewhat low-level drug dealer, the quantities in this case are nothing to sneeze at. Along with trafficking 40 grams of crack cocaine, he also distributed other banned substances such as heroin, powder cocaine, and methamphetamine. According to the presentence report, Bogard "maintained several . . . houses as places for him to deal drugs." [DE 32 at 5.] What's more, he did so, at least on one occasion, while armed. [*Id*. at 4.] Notwithstanding much of this, at sentencing, I chose to vary downward from the suggested guideline range of 110-137 months. I did so for a variety of reasons set out

11

in the Statement of Reasons. [DE 40.] However, respectfully, the Section 3553(a) factors do not favor any further compassion for Mr. Bogard.

Finally, I note that Bogard has served well less than half of his 92-month sentence. Requiring him to complete his sentence promotes respect for the law and delivers a fair punishment for Bogard's offense supported by the sentencing guidelines. The rehabilitation of Bogard is still crucial in this analysis. He has shown dedication to the RWI drug program, actively combatting his addiction, and assisting other inmates as a program coordinator. The defendant's rehabilitation efforts are impressive but overshadowed by other factors as mentioned earlier.

## Conclusion

For the reasons above, Bogard's Motion for Compassionate Release pursuant to 18 U.S.C. 3582(c)(1)(A) [DE 48] is DENIED.

SO ORDERED

ENTERED: September 18, 2023.

    /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT